UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVON WASHINGTON, et. al.,

                  **Plaintiffs,**

**v.**
                                    Civil Action 1:18-cv-12306
                                    (CM)

The City of New York, et. al.,

                  **Defendants.**

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF STEVEN ESPINAL'S MOTION FOR A PRELIMINARY INJUNCTION

John W. Liguori, Esq.
Senior Assistant Albany County Attorney
*Attorney for Albany County Defendants*
SDNY Bar Roll No.: JL1217
112 State Street, 6th Floor
Albany, NY 12207
Tel. No. 518-447-7110
Fax No. 518-447-5564

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

SUMMARY OF FACTS......................................................................................................2

LEGAL STANDARD......................................................................................................3

ARGUMENT......................................................................................................4

     I.     PLAINTIFF IS UNABLE TO SHOW THAT HES SUFFERING
          IRREPARABLE HARM..................................................................4

          A.  Plaintiff Is Not Suffering Constitutional Violations.............................4

          B.  Confinement to The Special Housing Unit Does Not
              Amount to Irreparable Harm.......................................................6

          C.  Plaintiff's Claim of Infringement of His Right to
              Counsel is Not Irreparable...........................................................8

     II.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON
          THE MERITS OF HIS CLAIMS.....................................................11

          A.  Right to Counsel......................................................................11

          B.  Procedural Due Process............................................................12

     III.   THE BALANCE OF HARDSHIPS STRONG
          FAVORS THE DEFENDANTS.......................................................13

     IV.   DENYING THE PRELIMINARY INJUNCTION IS
          IN THE PUBLIC'S INTEREST......................................................13

CONCLUSION.................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*A.T. ex rel Tillman v. Harder*, 298 F.Supp. 3d 391 (NDNY 2017)....................................6

*Bell v. Wolfish*, 441 U.S. 520 (1979)..........................................................................6

*Benjamin v. Fraser*, 264 F.3d 175 (2d Cir. 2001)........................................................8, 9

*Black v. Delbello*, 575 F.Supp. 28 (SDNY 1983).........................................................4, 5

*Butler v. Westchester County*, 2000 U.S. DIST LEXIS 3981 (SDNY 2000).........................6

*Covino v. Vermont Department of Corrections*, 933 F.2d 128 (2d Cir. 1991).....................8, 9

*Forts v. Malcolm*, 425 F.Supp. 464 (SDNY 1974)........................................................12

*Manon v. Albany County*, 2012 U.S. DIST LEXIS 180445 (NDNY)............................,,13

*Meachum v. Fano*, 427 U.S. 215 (1976)...................................................................4, 5, 9

*North American Soccer League, LLC v. United States Soccer Federation, Inc.,* 883 F.3d 32 (2d Cir. 2018)............................................................................................................3, 4

*N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286 (2d Cir. 2012)..................4, 11

*Procunier v. Martinez*, 416 U.S. 369 (1970)...................................................................8

*United States v. Mayo*, 646 F.2d 369 (9th Cir. 1981)........................................................9

*V.W. ex rel Williams v. Conway*, 236 F.Supp. 3d 554 (NDNY 2017)..................................6

**Statutes and Regulations**

40 R.C.N.Y. §§ 1-17.............................................................................................5

9 NYCRR 7210.....................................................................................................5

Fed. R. Civ. P. 12................................................................................................12

Fed. R. Civ. P. 19................................................................................................12

Fed. R. Civ. P. 65..................................................................................................1

N.Y. Corr. Law § 504............................................................................................5

18 U.S.C. §3626..................................................................................................13

**Other Authorities**

Correction Department, City of New York,  Schedule An Attorney Visit, https://www1.nyc.gov/site/doc/inmate-info/schedule-attorney-visit.page..................................11

## PRELIMINARY STATEMENT

Defendants County of Albany, Sheriff Apple, Superintendent Lyons, Lieutenants Torrisi, Valvo, Captain Harris, Sergeants Poole, Grimes, Colangione, Corrections Officers LaBombard, Haley, Beliveau, Adams, Kelly, Reddy, Anzalone, Lawson, Jarosz, Harris, Ton, Kehn, Shaver, Ratigan, Degonza, and Thompson (collectively the "County" or "County Defendants") respectfully submit the following brief in opposition to the *alternative reliefs* sought in Plaintiff's application for a mandatory injunction under Rule 65 of the Federal Rules of Civil Procedure.

Plaintiff's motion requests any of three types of relief: (1) Plaintiff's transfer from the Albany County Correctional Facility (hereinafter "ACCF") to a correctional facility in the City of New York operated by the New York City Department of Corrections (hereinafter"DOC") while this case is pending until his release from DOC custody; (2) Plaintiff's release from the Special Housing Unit (hereinafter "SHU") during the pendency of this case; and/or (3) Plaintiff be temporarily released from the SHU, be given a new hearing on the disciplinary charges against him, and be given reasonable regular access to unmonitored telecommunications between himself and his attorney throughout the pendency of this case.

The County takes no position regarding Plaintiff's primary request for relief, which seeks transfer to a correctional facility in the City of New York operated by DOC.  The County opposes the request for Plaintiff to be released from the SHU during the pendency of this case due to serious safety concerns for staff and other inmates if he were to enter into the general population at the ACCF. The County opposes Plaintiff's temporary release from the SHU pending a new disciplinary hearing on the charges against him.  Finally, Plaintiff is already receiving reasonable regular access to unmonitored telecommunications with counsel and therefore his request should be denied as moot. *See* Declaration of Ronald Murray ¶¶ 11-20.

## SUMMARY OF FACTS

The ACCF **does not** engage in torture.  Plaintiff's counsels' use of the term is inflammatory and without basis.  The case as it pertains to Plaintiff Espinal arises out of his transfer from the New York City Department of Corrections via a Substitute Jail Order ("SJO") issue by the New York State Commission of Correction.  *See* Plaintiff's Exhibit 29.  Plaintiff was part of a widely publicized assault on a Riker's Island Correction Officer and had been transferred for safety reasons.

Upon his arrival at the ACCF, he was subjected to strip search.  Exhibit A.[1]  While officers were attempting to conduct the search, Plaintiff turned toward staff and resisted, stating, "I'll cut you".  *Id.*  Plaintiff was then restrained and underwent an x-ray examination that revealed the presence of contraband in his rectum.  *Id.*  Plaintiff was asked to remove the contraband manually to no avail and struggled with officers.  As a result of his struggling, plaintiff received one 5 second taser cycle in order for the officers to regain control.  *Id.*  Plaintiff was then placed in a restraint chair and given food to eat in an attempt to pass the contraband naturally.  *Id.*  Having failed to pass any fecal matter during the night, Plaintiff was taken to Albany Medical Center Hospital on February 14, 2018.  Exhibit B.  There he voluntarily underwent a colonoscopy that recovered a razor blade and a piece of metal from his rectum.  Plaintiff returned from the hospital and was charged with thirteen disciplinary violations arising out of his conduct on February13, 2018.  Exhibit B and Exhibit C.

After a disciplinary hearing held on February 26, 2018, plaintiff denied having a razor blade and piece of metal in his rectum upon arrival to the ACCF and denied acting out against

---

[1] All citations to Exhibits herein refer to those annexed to the Declaration of John W. Liguori, Esq. dated February 11, 2019.

the officers.  Exhibit E.  He was found guilty of 10 out of 13 of the disciplinary charges and

received a sentence of 60 days in the SHU for each charge.  *Id.*  Plaintiff did not grieve or appeal

the findings of the disciplinary hearing.  Lyons Decl. ¶ 22.

      On July 4, 2018, plaintiff was found unresponsive in his cell and officers were summoned

to investigate.  Exhibit F.  Upon entering Plaintiff's cell, he grabbed the legs of a correction

officer and a struggle ensued.  *Id.*  The officers applied pepper spray in order to disengage the

Plaintiff.  *Id.*  After both occurrences on February 13, 2018 and July 4, 2018, ACCF Officers

fully reported the details of the encounter and filed use of force reports.  Exhibit A and Exhibit F.

Moreover, the ACCF is a fully accredited correctional facility being recertified by the State of

New York and the U.S. Department of Homeland Security on an annual basis.  Exhibit H and

Exhibit I.

      Plaintiff, now alleges that he is suffering irreparable harm due to his confinement in the

SHU.  As will be set forth at length below, Plaintiff has failed and is unable to establish a

constitutional harm entitling him to mandatory injunctive relief.  The Plaintiff ultimately seeks to

have this Court intervene in an administrative disciplinary finding made by the ACCF. The law

on such matters clearly opposes the court intervention sought by Plaintiff.  Furthermore, the

factual record directly contradicts the Plaintiff's claims of irreparable harm.  Ultimately, the

public interest in maintaining the safety of ACCF inmates and staff as well as the Plaintiff

himself substantially outweigh the relief sought by Plaintiff.  Therefore, the Plaintiff's motion for

mandatory injunctive relief must be denied.

## LEGAL STANDARD

      As Plaintiff seeks to alter the current status quo, he seeks a <u>mandatory</u>, rather than

preliminary, injunction.  *See North American Soccer League, LLC v. United States Soccer*

*Federation, Inc.,* 883 F.3d 32, 37 (2d. Cir. 2018).  Such an injunction is held to a higher

standard, requiring the Plaintiff show a *"clear or substantial likelihood of success on the merits."*

*Id.*, quoting *N.Y. Civil Liberties Union v. NYC Transit Auth.,* 684 F.3d 286, 294 (2d Cir. 2012).

## ARGUMENT

### I.   PLAINTIFF IS UNABLE TO SHOW THAT HE IS SUFFERING IRREPARABLE HARM

   *A.  Plaintiff is Not Suffering Constitutional Violations*

As Plaintiff's motion for injunctive relief applies to the County Defendants, he initially

contends that he was not afforded a fair disciplinary hearing, and therefore, his resulting

confinement to the SHU amounts to an ongoing constitutional violation.  However, Plaintiff

incorrectly assumes that he has a liberty interest in the conduct of his disciplinary hearing.  In

doing so, Plaintiff is essentially asking this Court to vacate the findings of the administrative

disciplinary hearing held at the ACCF on February 26, 2018 that ultimately put him in the SHU.

As is routinely held, "The federal courts do not supervise state prisons, the administration of

which is of acute interest to the States." *See Black v. Delbello*, 575 F.Supp. 28, 29 (SDNY 1983)

*citing Meachum v. Fano,* 427 U.S. 215, 228-229 (1976).

In this case, it is undisputed that a disciplinary hearing occurred on February 26, 2018 in

which the Plaintiff was afforded the right to present testimony and evidence.  Exhibit E.  He did

appear for the hearing and, incredibly, denied charges of fighting with corrections officers and

concealing contraband consisting of a razor blade and a piece of metal in his rectum.  *Id.*

Plaintiff also invoked his 5th Amendment privilege against self-incrimination when asked if he

had, in fact, had a razor blade and a piece of metal secreted in his rectum upon his arrival at the

ACCF during his General Municipal Law 50-h hearing.  Exhibit D, p. 27, line 20.  The

undisputed record evidence at this state of the litigation shows that a razor blade and a piece of

metal were recovered from Plaintiff's rectum after a voluntary colonoscopy performed the day after his arrival after the Plaintiff was unable to pass the objects from his rectum naturally. Exhibit B and Exhibit C. This evidence alone, was a sufficient basis for disciplinary action and placement in the SHU. Taken together with Plaintiff's threats to, and assaults upon corrections staff, the evidence overwhelmingly demonstrates the need for such a placement.

The fact that New York City Regulations (R.C.N.Y. §§ 1-17) do not permit segregated confinement for inmates such as the Plaintiff is of no moment and does not a create a liberty interest. The New York City regulations simply do not apply in Albany County. The transfer of the Plaintiff to the ACCF was made pursuant to New York State Corrections Law § 504 and 9 NYCRR § 7210.1. Nowhere does the New York City Regulation place any restriction on the "substitute jail order" process which clearly provides that "[a]ny inmate transferred pursuant to this Part shall be entitled to all rights and privileges available to other inmates of the receiving facility..." 9 NYCRR §7210.9. Furthermore, as will be discussed at length *infra*, the ACCF does implement a grievance and appeal procedure for disciplinary violations.

Plaintiff's argument is a desperate attempt to create a procedural due process right where none exists. Asking this Court to rule upon the exercise of judgment by ACCF corrections officers' performance of a discretionary function would be to interfere in the "day to day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges." *Black v. DelBello*, 575 F.Supp. 28, 30 (SDNY 1983), *citing Meachum v. Fano*, 427 U.S. 215, 228-229 (1976).

Likewise, the Plaintiff has failed and is unable to establish a substantive due process right to support his claim of a constitutional violation. It is well settled that "[s]o long as a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental

objective, it does not, without more, amount to punishment." *Butler v. Westchester County*, 2000 U.S. DIST. LEXIS 3981 (SDNY 2000) *citing Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

In the present case, it cannot be disputed that the Plaintiff arrived at the ACCF with a razor blade and a piece of metal inserted into his rectum.  Exhibit B and Exhibit C.  He was also being transferred for safety reasons after having carried out a vicious gang attack on a Riker's Island Corrections Officer, resulting in that officer sustaining serious injuries to his neck and spine (upon information and belief a video capturing the assault has been provided to and was received by the Court).  The legitimate government objective in housing the Plaintiff in the SHU after his disciplinary hearing is the protection of ACCF inmates, officers, and staff.  Therefore, any claim Plaintiff has to a substantive due process right is without merit and must be denied on this mandatory injunction application.

### B. Confinement to the Special Housing Unit Does Not Amount to Irreparable Harm

Plaintiff's confinement to the SHU at age nineteen does not in and of itself result in irreparable harm.  Initially, the cases relied upon by Plaintiff in support of his argument that any restrictive or segregated confinement amounts to irreparable harm are factually dissimilar and not applicable to the case at hand.  Specifically, Plaintiff places great weight on *A.T. ex rel Tillman v. Harder*, 298 F.Supp. 3d 391 (NDNY 2017) and *V.W. ex rel Williams v. Conway*, 236 F.Supp. 3d 554 (NDNY 2017).  Both cases dealt with the issue of the quality of the education of juveniles at those facilities while in restricted or segregated housing.  Unlike the case at hand, the plaintiffs in these cases did have a liberty interest at stake in the right to receive an adequate education.  Here, the Plaintiff does not allege that he is being deprived of any constitutional rights other than his Sixth Amendment right to counsel, discussed at length *infra*.

Moreover, the claims asserted on Plaintiff's behalf that his is "mentally decompensating" as a result of being housed in the SHU are belied by the factual record. The declaration of ACCF Superintendent Michael J. Lyons shows that the cells in the SHU are 17.9 feet by 8.6 feet, not 6 feet by 8 feet as alleged in the Complaint. *See* Plaintiff's Am. Complaint ¶ 97; Lyons Dec. ¶28. SHU inmates are entitled to visitation and to make telephone calls and video conferences with family, friends, and their attorneys. Lyons Decl. at ¶¶ 29-32. Their hygiene and personal needs are checked daily by a member of the Inmate Services Unit. *Id.* at ¶ 33. SHU inmates are also afforded weekly visits by mental health counselors and professional. *Id.* at ¶34. They also have their choice of spiritual advisors is they desire. *Id.*. Therefore, claims that the Plaintiff is being denied mental health therapy are disingenuous. Plaintiff admitted at his 50-h hearing on November 21, 2017 that he sees a psychologist once a month and counselors weekly. Exhibit D, p. 11, lines 1-4. A nurse comes around every morning to check on any medical needs. *Id.* at p. 33, lines 14-15.

Likewise, the factual record contradicts Plaintiff's own consulting psychologist's opinion that he is "mentally decompensating." On August 14, 2018, Plaintiff actually wrote a letter to Superintendent Lyons thanking him for extending telephone usage and showing remorse for his previous conduct. Lyons Decl. ¶ 32 and Exhibit K. Shortly thereafter, Superintendent Lyons provided the Plaintiff with a computer table for his use to text messages to family and friends and also affords him the opportunity to listen to music and watch movies. Lyons Decl. ¶ 32. These admissions by the Plaintiff exist in stark contrast to his claims of mental suffering and harm. Accordingly, Plaintiff's motion for a mandatory injunction should be denied.

C.  *Plaintiff's Claim of Infringement of His Right of Counsel is Not Irreparable.*

Plaintiff asserts that his confinement at the ACCF causes him irreparable harm in the form of compromising his defense in his pending criminal matters.  Plaintiff asserts several difficulties relating to his ability to communicate with his attorney.  He asserts that: (1) the distance between his NYC attorney and the ACCF makes it impossible for his attorney to prepare his defense; (2) that ACCF policies regarding head counts and visiting hours impermissibly constrain interpersonal contact to consult with his attorney in Albany; (3) that difficulties with videoconferencing make it an ineffective substitute for interpersonal interaction; and fancifully asserts that (4) numerous unnamed individuals have led him to believe all communication between inmates and attorneys are monitored.

While an actual injury to the legal case is not required to challenge prison conditions as potentially violations of the Sixth Amendment, such alleged conditions must still be evaluated to determine whether they unjustifiably obstruct the availability of a pretrial detainee and his attorney to prepare his defense.  *See Benjamin v. Fraser*, 264 F.3d 175, 178 (2d Cir. 2001). Courts have weighed the burden of such restrictions against the "legitimate interest in penal administration and proper regard that judges should give to the expertise and discretionary authority of correctional officials."  *Procunier v. Martinez*, 416 U.S. 369, 420 (1970).  When Plaintiff's allegations are held to such an evaluation, he cannot demonstrate that he has suffered, or will suffer irreparable harm to his criminal defense.

Distance alone is not a sufficient basis to successfully allege irreparable harm.  The Second Circuit's controlling precedent is that the distance between an attorney and his client is a factor that should be considered in evaluating irreparable harm to person's Sixth Amendment rights, but is not itself dispositive.  *See Covino v. Vermont Department of Corrections*, 933 F.2d

128, 130 (2d Cir. 1991) (remanding the case to the district to address this issue).  Courts have

held that distance from one's attorney alone is insufficient to establish a Sixth Amendment

violation.  *See United States v. Mayo*, 646 F.2d 369 (9th Cir. 1981) (convict transferred from

California to Arizona failed to show that the Government denied him access to counsel thereby).

Further, Plaintiff's assertion creates the very pervasive, micromanaging of the day-to-day

operations of correctional facilities that courts are ill equipped to evaluate.  *Meachum v. Fano*,

427 U.S. 215, 228-229 (1976).

Plaintiff's reliance on *Benjamin v. Fraser*, 264 F.3d 175, 178 (2d Cir. 2001) to illustrate

how facility conditions impermissibly impinge upon an individual's Sixth Amendment rights is

misplaced.  ACCF policies regarding visiting procedures at are quite broad, and substantially

dissimilar to the circumstances of the standards of *Benjamin*.  There, pretrial detainees were

forced to endure up to two hour delays before being allowed to meet with clients, subject to

random and unpredictable head counts, and attorneys were not provided with such policies,

rendering them completely unable to schedule around them.  *Id*. at 179.

ACCF policies and procedures are significantly broader and clearer than those

complained of in *Benjamin*, as the Declaration of Lieutenant Ronald Murray illustrates in detail.

Times for visitation are significantly broader than what Plaintiff has asserted.  *See* Murray Decl.

¶¶ 5-7.  Additionally, the ACCF has made available accommodations for attorneys who must

travel upon request.  *Id*. at ¶7.

Plaintiff's concern regarding teleconferencing issues similarly fail to demonstrate

irreparable harm.  Attorneys may set up a video conference with their clients via website link,

ipwebadvisor.com.  *Id*. at ¶ 22.  Such videoconferences are not recorded.  *Id*. at ¶ 24.  The

facility is then notified of that request for a privileged videoconference via email.  *Id*. at ¶ 26.  At

the time of the scheduled video conference, inmates are escorted to a consultation room, where the video consultation equipment is set up, and the inmate is allowed to converse with his attorney. *Id.* at ¶ 27. The teleconferencing program rarely suffers from technical difficulties. *Id.* at ¶ 31.

Plaintiff's final allegation concerns the possibility that telephone and videoconference communications between inmates and counsel are monitored. Such an assertion is belied by the facts. Teleconferences are scheduled by email, and are held into a consultation room with a closed door. *Id.* at ¶ 28. Once the telephone or videoconference begins, the inmate is left to confer with his attorney in private, while a corrections officer observes the inmate from behind a closed door. *Id.* at ¶¶ 28-29.

While the ACCF does possess means of recording telephone conversation within the facility, such a system is **not** used to record telephone conversations between inmates and their attorneys. *Id.* at ¶ 11. Inmates are allowed, at any time, to provide the names and phone numbers of their attorneys to corrections staff. *Id.* at ¶13. Once the provided numbers are verified to be attorneys, they are placed upon a do not record list. *Id.* Once placed on the do not record list, those numbers are not recorded by the system. *Id.* at ¶ 14. When a telephone call is placed to an attorney whose client is in the SHU, the phone is brought to the detainee, the phone number is dialed, and the phone receiver is passed through a sally port to the detainee. *Id.* at ¶¶ 17-20. Corrections officers remain on the SHU tier while the detainee is engaged in the phone call but are unable to monitor the conversations of the detainee. *Id.* at ¶ 20. To establish irreparable harm, Plaintiff must demonstrate more than a hypothetical fear of communications being intercepted. Such a fear is infinitely regressive and entirely unsubstantiated. Accordingly,

Plaintiff has failed to make even a minimal showing that he will suffer irreparable harm by remaining in the SHU.

## II.     PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.

To prevail in enforcing a mandatory injunction, a Second Circuit Plaintiff must demonstrate a "clear or substantial likelihood of success on the merits" of his constitutional claims. *NY Civil Liberties Union v. N.Y.C. Trans. Auth.,* 684 F.3d 286, 294 (2d Cir. 2012). Plaintiff's alleged claims of constitutional violation fall well short of that standard.

### A. *Right To Counsel*

Plaintiff's allegations are held together by threadbare, hearsay assertions that the County is engaging in a variety of perfidious behaviors, and fail to demonstrate a clear or substantial likelihood that Plaintiff will succeed on the merit of these claims.  As state above in Part I subsection C, *supra,* distance alone is insufficient to establish a violations of a pretrial detainee's right to counsel.  ACCF policies that allegedly restrict the Plaintiff's access to his counsel, such as alleged minimal visiting time with their attorney due to headcounts, are belied by the facts. *See* Murray Decl. ¶¶ 5-7.  In fact, the policies provided by the ACCF may in fact be broader than those provided for in the facilities Plaintiff desires to be transferred *to,* as the ACCF's visitation schedule provides for more visitation time than the DOC's current visitation schedule allows.[2] Plaintiff's more egregious concerns regarding the insecurity of telephonic and videoconference conversations with his client, are supported by no more than naked assertions by unnamed inmates and "Joe" – a mysterious staff member who contends that all communications are

---

[2] *See* Correction Department, City of New York,  Schedule An Attorney Visit, https://www1.nyc.gov/site/doc/inmate-info/schedule-attorney-visit.page (conferring that visitation may be scheduled in one-hour blocks for a **maximum** of two hours, and may only be extended if space is not needed).

monitored.  These allegations, composed of unknown parties issuing vague and unspecified

threats of monitoring and retaliation are insufficient to establish a clear and substantial likelihood

of success on the merits of the matter.  Plaintiff's allegations are not sufficient, in and of

themselves, to clearly establish that he would prevail upon the merits of the claims asserted.

Accordingly, the mandatory injunction relief Plaintiff demands must be denied.  *See Forts v.

Malcolm,* 425 F.Supp. 464 (SDNY 1974) (factual dispute over constitutional claims between

parties renders preliminary injunction an inappropriate remedy).

   B.  *Procedural Due Process*

     The Plaintiff is similarly unlikely to succeed on the merits of his procedural due process

claims.  First, Plaintiff has failed to name a necessary party to that actions, that party being the

New York State Commission on Correction.  It is without question that the Commission solely

orchestrates the Substitute Jail Orders.  Moreover, the relief sought by the Plaintiff seeks to

overturn the decision of the Commission without naming it as a defendant, thus it is not

permitted to defend and protect its interests.  Therefore, it is more likely that the Plaintiff's

complaint will be dismissed at this junction pursuant to Fed. R. Civ. P. 12 (b)(7) and 19(a)(1).

     More specific to the claims against the Albany County Defendants is the fact that the

Plaintiff failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act

("PLRA").  *See* Lyons Decl. at ¶ 21-22.  The record clearly establishes that the ACCF has a

grievance and appeal procedure.  In fact, Plaintiff admitted at his 50-h hearing that he was

advised of the grievance procedure and had been provided with the grievance rulebook.  Exhibit

D, p. 34, lines 9-15.  Despite this, Plaintiff did not grieve or take any form of appeal from the

disciplinary hearing decision rendered on February 26, 2018.  Exhibit D, p. 53, lines 18-21.  It is

well settled that failure to exhaust administrative remedies as a condition precedent to a lawsuit

results in dismissal. *Manon v. Albany County*, 2012 U.S. Dist. LEXIS 180445 (NDNY) (where

District Court held that plaintiff's request for preliminary injunction was denied for failure of

plaintiff to exhaust administrative remedies through use of grievance procedure).

In view of the foregoing, it is respectfully submitted that the Plaintiff does not have a

likelihood of prevailing successfully on his procedural due process claims arising out of the

conduct or penalty of the ACCF disciplinary hearing held on February 26, 2018.  Therefore, the

Plaintiff's motion for a mandatory injunction should be denied.

## III.    THE BALANCE OF HARDSHIPS STRONGLY FAVORS THE DEFENDANTS

In considering a request for mandatory injunctive relief, the Court must give "substantial

weight" to any adverse impact on public safety or the operation of a criminal justice system that

the relief might have.  *See* 18 U.S.C. §3626(a)(2).  Here, the balance of hardships clearly favors

the denial of Plaintiff's two forms of alternative relief.  Plaintiff was sent to the ACCF because

he participated in violent assault upon a correctional officer at Riker's Island.  Upon his entry at

the ACCF on February 13, 2018, Plaintiff was carrying a razor blade and a piece of metal in his

rectum.  Exhibit A, Exhibit B and Exhibit C.  When a strip search of Plaintiff was conducted,

Plaintiff turned off the wall towards corrections officers and threatened to cut them.  Exhibit A.

This altercation combined with the possession of prison contraband is what led to Plaintiff being

housed in the SHU, and the disciplinary hearing that followed it.  The threat presented by

removing Plaintiff from the SHU to correction officers, medical personnel, and other prisoners

strongly tips the balance of harms against the granting of the Plaintiff's mandatory injunction.

## IV.    DENYING THE PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST

Plaintiff's appeal to the public interest is similarly of no moment.  As discussed in Part II

above, Plaintiff's conclusory assertions of misconduct do not justify the granting of the sweeping

relief Plaintiff seeks here.  The public interest in protecting the inmates, corrections officers and medical staff of the ACCF clearly outweigh the interests of Plaintiff under these circumstances.

## CONCLUSION

WHEREFORE, the County Defendants respectfully request the Court deny the Plaintiff's motion for a mandatory injunction, together with such other relief as the Court deems just and proper.

Dated: February 11, 2019
Albany, New York

**OFFICE OF THE ALBANY COUNTY ATTORNEY
DANEIL C. LYNCH, ESQ.**

By: _____/s/_____
John W. Liguori
Senior Assistant County Attorney
SDNY Bar Roll No.: JL1217
112 State Street, 6th Fl.
Albany, New York 12207
518-447-7110

*Attorneys for Albany County Defendants*

14